# F. & W. GRAND FIVE-TEN-TWENTY-FIVE CENT STORES INCORPORATED *v.* EISEMAN *et al.*

1. Writings relied upon to take a transaction out of the statute of frauds must be complete in themselves, and must contain the entire agreement, and must disclose the subject-matter, the parties thereto, and all the terms of the undertaking.

2. On April 9, 1924, the plaintiff addressed a letter to Joseph P. Day Incorporated, the duly authorized agent and broker of the defendants, for the purpose of securing a lease of described real estate owned by the defendants in the City of Atlanta, in which letter the plaintiff authorized said agent and broker to negotiate for it a lease of said premises for a term of twenty-five years on certain specific terms and conditions. On May 9, 1924, said agent and broker, in reply to the letter of April 9, 1924, wrote plaintiff a letter stating that it had taken up with the owners of said premises the contents of plaintiff's said letter, and had secured their acceptance and approval of the lease upon the terms and conditions outlined in said letter of plaintiff. *Held*, on general demurrer, that the letter of the plaintiff to the agent and broker of the owners, in view of the allegation of the petition that Day Inc. was the duly constituted agent of the owners, constitutes an offer by the plaintiff to lease from the owners these premises upon the terms and conditions therein stated; that the letter of the agent and broker of May 9, 1924, in reply to said letter of the plaintiff, constitutes an acceptance by the owners of said offer of the plaintiff; and that the offer and acceptance constitute a binding agreement between the parties, if these writings otherwise meet the requirements of the statute of frauds.

3. The letter of the plaintiff to Joseph P. Day Incorporated is not a mere authorization to the latter to institute as plaintiff's agent preliminary negotiations looking to the formation of a contract of lease; but on the contrary, when construed in the light of all the circumstances, constitutes an offer on the part of the plaintiff to lease the premises on the terms and conditions therein stated, which offer the plaintiff authorized the agent and broker of the owners to submit to them.

4. The agent of the party seeking to enforce a contract can not sign the memorandum required by the statute of frauds so as to bind the other party thereto, as this would in effect be one party binding the other party, and to allow one of the parties to sign, either by himself or by an agent, as an agent of the other, would open the door to the fraud which the statute is intended to prevent; but a mutual agent may sign the memorandum when authority so to do has been by both parties actually conferred upon him, with knowledge of each that he is acting for both, or where it is deemed to have been conferred because of the nature of his office or occupation. Contracts of dual agency are not void per se, but only so when the fact that the agent represented both parties was not known to each.

5. Where a memorandum for lease of premises provides for the payment of a stipulated annual rental, but does not state when it shall be due,

21

it is generally payable at the end of each rent year. If for any reason the time of payment of the annual rental should fall under any of the exceptions to the general rule, the law would still fix the time of payment, and thus the time of payment would be rendered certain.

6. A memorandum for a lease of land, to be sufficient to meet the requirements of the statute of frauds, must name, or in some way indicate or show, who are the parties to such contract. If the lessor is described in the memorandum as owner, the description is sufficient, although he is not named.

7. Where a contract for the lease of real estate is in writing, signed by both parties, is certain and fair, is for an adequate consideration, and capable of being performed, a court of equity, as a matter of course, will decree its specific performance.

No. 4733. APRIL 18, 1925.

Equitable petition. Before Judge Humphries. Fulton superior court. November 20, 1924.

The F. & W. Grand Five-Ten-Twenty-five Cent Stores Incorporated filed its equitable petition against Rosa Eiseman, Isaac S. Hess, Maurice Wyman, Sidney Straus, trustees under the last will and testament of Gershon Eiseman, deceased, Moses B. Eiseman, J. B. Eiseman, Louis Eiseman, and B. J. Eiseman. The petition alleged, that the said trustees and Moses B. Eiseman were residents of Baltimore County, Maryland, that J. B. Eiseman was a resident of Rahway, N. J., that Louis Eiseman was a resident of Atlantic City, N. J., and that B. J. Eiseman was a resident of Fulton County, Ga.; that the subject-matter of the suit was a described lot of land with a building thereon known as the Eiseman Building, the same being numbered 11, 13, 17 Whitehall Street, Atlanta, Ga.; that the defendants were the owners of said property; that Joseph P. Day Inc. was the duly authorized agent and broker of the defendants to secure a lease of said property; that on April 9, 1924, Joseph P. Day Inc. approached petitioner on behalf of defendants and requested petitioner to authorize it to submit to its clients an offer for the rental of said property; that petitioner submitted to Joseph P. Day Inc. an offer for the rental of said property for 25 years, commencing August 2, 1925, at a rental of $50,000 per year, and containing other stipulations, said offer being as follows:

"April 9, 1924.

"Joseph P. Day Inc., 67 Liberty Street, New York City.

"Attention: Mr. Ira A. Lurie.

"Gentlemen: With respect to the conversation we have had

concerning the leasing by us of the entire land and building known as 11 Whitehall street, Atlanta, Ga., which is occupied at the present time by F. W. Woolworth & Co., we authorize you to negotiate a lease for us on the said premises upon the following terms and conditions: The term thereof shall be twenty-five (25) years, commencing August. 2, 1925, at a rental of $50,000 per year, plus usual annual real estate taxes,° water charges, and insurance premiums for fire insurance upon the building, so long as we shall remain personally liable for the performance of the lease; we shall have the right to make such repairs and alterations as we may require from time to time, so long as we deliver the building back to the landlord upon the expiration of the lease in the same condition as it is upon the commencement of the term, reasonable wear and tear excepted. The landlord may place mortgages upon the ·said premises superior to our lease, but not in excess of 70% of the appraised value of the land and buildings at the time of the commencement of the term. In case of damage or destruction by fire, of the whole or any part of the premises, the landlord is to reconstruct and rebuild with all diligence, and rent to be abated during the period that we are unable to make use of the premises fully, and to be abated partially if we can make use of part of the premises. The physical possession of the premises is to be delivered to us at the commencement of the term, free and clear of all tenants or claims of tenants, and also of all violations of any character. The authorization contained in this letter shall terminate, cease, and come to an end by May 10, 1924.

"Yours very truly, F. & W. Grand 5-10-25 Cent Stores Inc.

"By Harold F. Shine, Vice-President."

The petition further alleged that said Joseph P. Day Inc., acting under the directions and on behalf of said defendants, accepted said offer, and wrote to petitioner a letter setting forth said acceptance, which was as follows:

"Joseph P. Day Inc., Real Estate, 67 Liberty Street.

"New York, May 9th, 1924.

"F. & W. Grand 5-10-25¢ Stores Inc., 905 Broadway, New York City.

"Gentlemen: We have taken up with the owners of the building, No. 11 Whitehall street, Atlanta, Ga., the contents of your letter to us of April 9th, 1924, and we have secured their accept-

ance and approval to the lease, the terms and conditions of which are outlined in your letter of April 9th, 1924. We suggest that to expedite the matter you have your counsel get in touch with Messrs. Stoddard & Mark, the owners' attorneys, for the preparation and consummation of the lease.

"Yours very truly, Joseph P. Day Inc., By Ira A. Lurie."

The petition further alleged, that, after petitioner's offer to rent said premises as described, the attorneys for the defendants, Stoddard & Mark, of New York, and the attorney for petitioner, Nathan Burkan, proceeded to consummate said agreement and to execute a lease in compliance with its terms; that Stoddard & Mark, under the direction and on behalf of the defendants, submitted to petitioner a form of lease for its approval; that petitioner began a study of said form of lease to see that it properly incorporated said agreement, and before it completed said study and before its execution said defendants notified petitioner that they would not comply with the terms of said agreement and would refuse to execute said agreement; that the defendants claimed that after entering into said agreement they had the opportunity of leasing said property for a longer period of years at a greater annual rental, and demanded that petitioner agree to a modification of the terms of said contract and pay an additional annual rental; that petitioner refused to do so, but notified defendants that it demanded compliance with the terms of said contract and that it was ready and willing to perform and execute the same, which petitioner is now ready and willing to do; and that petitioner has suffered irreparable injury as a result of the breach of said contract by the defendants, and has no adequate remedy at law. The petitioner prayed: (a) that the defendants be decreed to specifically perform said contract and execute a lease in compliance therewith; (b) that the defendants be decreed to permit petitioner to go into possession of said property in accordance with said contract; (c) that the defendants be enjoined from changing the status of said property by selling, leasing, encumbering or otherwise disposing of the same pending determination of the issue raised; (d) that process issue and an order be granted directing service of this action upon the non-resident defendants by publication.

The defendants demurred generally to the petition, on the

grounds (1) that it set forth no cause of action, and (2) that there was no equity therein. They demurred specially on various grounds. The court sustained the general demurrer and dismissed the petition. To this judgment the plaintiff excepted.

*Dorsey, Brewster, Howell & Heyman, Herman Heyman, Charles Schwartz,* and *Little, Powell, Smith & Goldstein,* for plaintiff.

*Candler, Thomson & Hirsch* and *Douglas & Douglas,* for defendants. .

HINES, J. (After stating the foregoing facts.)

1. To be sufficient as a memorandum under the statute of frauds, a writing must be complete in itself, leaving nothing to rest in parol. The entire agreement must be expressed in the writing or writings relied upon to take the transaction out of the statute. The memorandum must disclose the subject-matter of the contract, the parties thereto, the promise or undertaking, and the terms and conditions. *North* v. *Mendel,* 73 *Ga.* 400 (54 Am. R. 879) ; *Lester* v. *Heidt,* 86 *Ga.* 226 (12 S. E. 214, 10 L. R. A. 108) ; *Douglass* v. *Bunn,* 110 *Ga.* 159 (35 S. E. 339) ; *Oglesby Grocery Co.* v. *Williams,* 112 *Ga.* 359 (37 S. E. 372) ; *Tippins* v. *Phillips,* 123 *Ga.* 415 (51 S. E. 410) ; *Borum* v. *Swift,* 125 *Ga.* 198 (53 S. E. 608) ; *Pearce* v. *Stone,* 125 *Ga.* 444 (54 S. E. 103) ; *Hightower* v. *Ansley,* 126 *Ga.* 8, 11 (54 S. E. 939, 7 Ann. Cas. 927) ; *Corbin* v. *Durden,* 126 *Ga.* 429 (55 S. E. 30) ; *Richardson* v. *Perrin,* 133 *Ga.* 721 (66 S. E. 899) ; *Barnes* v. *Cowan,* 147 *Ga.* 478 (94 S. E. 564) ; *Moore* v. *Adams,* 153 *Ga.* 709 (113 S. E. 383, 23 A. L. R. 925). If the memorandum relates to the sale or lease of lands, it need not be more specific than is required in a deed of conveyance or an indenture of lease.

2. It is insisted by counsel for the defendants that the two papers upon which the plaintiff relies to establish the contract of lease between it and the defendants do not contain an offer and acceptance and do not evidence an intention to make a contract binding under the statute of frauds. The letter of April 9, 1924, from the plaintiff to Joseph P. Day Inc., when construed in the light of the allegations of the petition, constitutes an offer from the plaintiff to rent from the defendants the premises therein described. The petition alleges that Joseph P. Day Inc. was the duly authorized agent and broker of the defendants, to secure a lease of the property owned by the defendants and described in the

petition; that on April 9, 1924, Joseph P. Day Inc. approached petitioner on behalf of the defendants, and requested petitioner to authorize said agent and broker to submit to its clients an offer for the rental of said property; and that petitioner submitted to said agent and broker the offer for rental contained in its letter of April 9, 1924, on the terms and stipulations therein stated. These allegations of the petition are admitted .by the demurrer; and in view of these facts, we think that this letter of petitioner to the broker and agent of the defendants constitutes an offer by petitioner to the defendants to lease these premises upon the terms and conditions therein stated. The petition further alleges that on May 9, 1924, said agent and broker, acting under the direction and on behalf of the defendants, accepted said offer and wrote to petitioner the letter of that date, in which the writer stated that they had taken up with the owners of the property the contents of plaintiff's letter of April 9, 1924, and had secured the owners' acceptance of the offer and their approval of the lease, the terms and conditions of which were outlined in petitioner's letter. The allegation of the petition that the agent and broker, acting under the direction and on behalf of the defendants, accepted said offer of lease is admitted to be true by the demurrer. In view of these facts, we think that the offer of lease contained in petitioner's letter of April 9, 1924, was duly accepted by the defendants by and through their agent and broker, who, the petition alleges, was the duly authorized agent of the defendants in this transaction. This acceptance of petitioner's offer was unconditional; and the offer and the acceptance thereof constitute a binding agreement between the parties, if the writings otherwise meet the requirements of the statute of frauds.

3. It is further insisted by the defendants that the letter from plaintiff to Joseph P. Day Inc. only authorized preliminary negotiations looking to the formation of a contract, and did not authorize the agent to consummate the actual agreement. The language, "we authorize you to negotiate a lease for us," in this letter, standing alone and dissociated from the facts stated in the petition, would seem to constitute the addressee the agent of the plaintiff, with authority to negotiate a lease for the plaintiff of the premises in dispute. In view of the fact that the corporation to whom this letter was addressed was the duly authorized agent of the owners

to lease this property, and in view of the fact that the plaintiff and this agent had had a conversation as to the leasing by plaintiff of these premises, the fair construction of this language is that the plaintiff's intention was to inform the agent that it was willing to rent these premises upon the terms and conditions stated in this letter, and that in effect the letter was an offer to the owners to rent these premises upon the terms and conditions therein stated. When we take into consideration the fact that the addressee was the agent of the owners, authorized to lease the premises, the plaintiff meant simply to inform the agent that it was willing to lease the premises upon these terms and conditions; and this letter to the agent constituted an offer to lease upon such terms and conditions. The letter of the agent in reply to this letter of the plaintiff stated that the agent had taken up with the owners the contents of the letter of April 9, 1924, and had secured the owners' acceptance and approval of the lease upon the terms and conditions outlined in that letter. Here the agent, on behalf of its principals, accepts unconditionally the offer of plaintiff. The suggestion in the letter of acceptance that the plaintiff's counsel get in touch with the attorneys of the owners, "for the preparation and consummation of the lease," does not in any way qualify the acceptance of plaintiff's offer to the owners; but simply looks to the preparation and execution of the formal lease, embodying the terms and conditions expressed in the memorandum. So we are of the opinion that these writings do not constitute mere negotiations looking to the making of a contract of lease, but in and of themselves constitute a memorandum embodying a full and complete contract which was to be embodied in a formal lease.

4. It is next urged that Joseph P. Day Inc., being the agent of the plaintiff, could not act as agent of the owners in accepting the offer of the plaintiff for the lease of the premises. We concede that the agent, in signing for one of the parties, must be some third person and not the other party to the contract. *Happ* v. *Hunter,* 145 *Ga.* 836 (3) (90 S. E. 61). So the agent representing the party seeking to enforce the contract can not sign the memorandum so as to bind the other party thereto, as this would in effect be one party binding the other party; and to allow one of the parties to sign, either by himself or by agent, as agent for the other, would open the door for the fraud which the statute is intended to pre-

vent. 1 Clark & Skyles on Agency, § 31. One person may be the agent of both parties to a transaction for the purpose of signing it, where authority by both has been actually conferred upon him, or where it is deemed to have been conferred because of the nature of his office or occupation. 27 C. J. 292, § 365. Contracts of dual agency are not void per se, but only so when the fact that the agent represented both parties was not known to each. *Red Cypress L. Co.* v. *Perry,* 118 *Ga.* 876 (45 S. E. 674). So, if the owners of this property knew that Joseph P. Day Inc., their agent, had been selected by the plaintiff as its agent to secure this lease, and had knowledge of the fact that the agent was acting for both parties, then the owners can not raise the objection that the memorandum was void because signed on their behalf by a mutual agent of both parties. *Fitzsimmons* v. *Southern Express Co.,* 40 *Ga.* 330 (2 Am. R. 577). But, as we have hereinbefore stated, we do not think that, under a fair construction, the plaintiff's letter constituted Joseph P. Day Inc. the agent of the plaintiff in negotiating this lease. The plaintiff simply submitted to this agent an offer to be made by him to the owners as agent of the latter.

5. It is next insisted by the defendants that the time of payment of the stipulated rent is so uncertain that the writing embodying the agreement between the parties is unenforceable under the statute of frauds. The offer of plaintiff contains these words: "The term thereof [the lease] shall be twenty-five (25) years, commencing August 2, 1925, at a rental of $50,000 per year." The time of payment of this rental is not stated. It is to be paid annually, but whether in advance or at the end of the year, or in certain sums at intermediate periods, is not stated. Where the memorandum of the lease contract provides for the payment of a stipulated annual rental, but does not state when it shall be due, it is generally payable at the end of each rent year. *Parker* v. *Gortatowsky,* 129 *Ga.* 623 (59 S. E. 286) ; 36 C. J. 361, § 1197. In view of this principle, the time of payment of this rent is not so uncertain as to render the agreement unenforceable under the statute of frauds. If for any reason the time of payment of the annual rental should fall under any of the exceptions to the general rule, such as a general custom, the law would still fix the time of payment, and thus the time of payment would be rendered certain.

6. The defendants further assert that the writings relied on to

take the transaction out of the statute of frauds are so uncertain in their designation of the parties as to be unenforceable under that statute. These writings do not name the lessors. In the offer there is no designation of the lessors except such as is contained in the following language: "we shall have the right to make such repairs and alterations as we may require from time to time, so long as we deliver the building back to the landlord upon the expiration of the lease in the same condition as it is upon the commencement of the term, reasonable wear and tear excepted." Here reference is made to the "landlord," and the term "landlord" necessarily implies the owner of the premises proposed to be leased. In the acceptance of the plaintiff's offer by the agent of the lessors the lessors are not named, but reference is made to them as "the owners of the building." Is this designation sufficient? The memorandum evidencing the contract of lease sufficient to meet the requirements of the statute of frauds "must in some way indicate or show who are the parties to such contract." *Oglesby Grocery Co.* v. *Williams Mfg. Co.*, and *Moore* v. *Adams*, supra. It is insisted by counsel for the defendants that, under the ruling in the last-cited case, the writing must disclose the names of the lessors. While some of the general language used in the second headnote and in the opinion of the court in that case gives some color to this contention, such language, when construed in reference to the facts of that case, does not sustain the position of counsel for the defendants. That case dealt with a contract for the sale of land, and the writing did not name nor otherwise designate the vendor, and the question whether the vendor could be designated other than by his name was not before the court for consideration. The court expressly quoted and approved the ruling in *Oglesby Grocery Co.* v. *Williams Mfg. Co.*, supra, that the writing "must in some way indicate or show who are the parties to such contract." The ruling in *Moore* v. *Adams*, supra, is not authority for the contention that lessors can not be designated in a contract of lease other than by their names. Undoubtedly the best way to designate vendors or lessors is to name them; but any designation of vendors, vendees, lessors or lessees, which clearly discloses them, is sufficient under the statute of frauds. As we have said above, no greater particularity is required in designating the lessors in a contract of lease than in disclosing grantors or

grantees in a deed of conveyance. In *Hogg* v. *Odom,* Dudley (*Ga.*), 185, it was held that a deed conveying property to the "children of Nancy Jones" was not void for uncertainty, if it could be shown who were intended by these words and that they were in life and capable of taking at the time the deed was executed. In *Averit* v. *Alleam,* 23 *Ga.* 382, this court held that under a grant to the orphans of A., who had but a single orphan, that orphan took the title to the land granted. In *Ball* v. *Wallace,* 32 *Ga.* 170, this court held: "When a deed of gift contains grantees so designated or plainly referred to as to be easily ascertained, a subject-matter, and a time when the gift is to take effect, there is sufficient certainty to require the court to give it effect." In the deed of gift dealt with in the case last cited, the grantees were designated as "the other heirs" of the ancestor of the maker. The writing must state who are the parties to the contract, either by naming them or by so designating them that they may be identified without reasonable doubt or dispute. 27 C. J. 275, § 329. So parties may be designated by their code names. Bibb *v.* Allen, 149 U. S. 481 (13 Sup. Ct. 950, 37 L. ed. 819). In Sale *v.* Lambert, L. R. 18 Eq. 1, the memorandum did not give the name of the vendor, but the particulars of the sale stated that it was by direction of "the proprietor." This was held a sufficient designation of the vendor. In Catling *v.* King, 5 Ch. D. 660, the vendor was not named; but it was stated that "the vendor is a trustee selling under a trust for sale." The court held that this was a sufficient description of the vendor to make the memorandum good under the statute of frauds. In Jarrett *v.* Hunter, 34 Ch. D. 182, Kay, J., said: "If the vendor is described in the contract as 'proprietor,' 'owner,' 'mortgagee,' or the like, the description is sufficient, although he is not named." So where the writing designated the purchaser as "Mr. Lee," it was held sufficient. Lee *v.* Cherry, 85 Tenn. 707 (4 S. W. 835, 4 Am. St. R. 800). So while an agreement for a lease should show both the lessor and lessee, the former need not be expressly named, but may be designated by such description as will render his identification clear.

In the writings in this case the lessors are referred to as the "owners" of the premises; and under the authorities above cited, and upon sound reasoning, such description of the lessors is

sufficient. Resort to parol evidence can not be had to show who are the owners of the real estate, but such ownership can only be shown generally by proof of written title. So the spirit and purpose of the statute of frauds are in no way defeated by permitting lessors to be designated by the term "owners" of the premises. By such description the identity of the lessors can be clearly established, and must usually be shown by writings.

7. Where a contract for the sale of land is in writing, signed by both parties, is certain and fair, is for an adequate consideration, and capable of being performed, a court of equity, as a matter of course, will decree specific performance of the contract. *Clark* v. *Cagle*, 141 *Ga.* 703 (82 S. E. 21, L. R. A. 1917A, 993); *Funk* v. *Browne*, 145 *Ga.* 828 (90 S. E. 64). The same principle is applicable in cases of contracts for the lease of land. *Robinson* v. *Perry*, 21 *Ga.* 183 (68 Am. D. 455); Pratt v. Railroad Co., 21 N. Y. 305; Cochrane v. Justice Mining Co., 16 Colo. 415 (26 Pac. 780); Post v. Davis, 7 Kan. App. 217 (52 Pac. 903); Bennett v. Moon, 110 Neb. 692 (194 N. W. 802, 31 A. L. R. 495).

8. Applying the principles above ruled, we are of the opinion that the petition set forth a cause of action, and that the court below erred in sustaining the general demurrer.

*Judgment reversed. All the Justices concur.*