## 65954. SIMMERMAN v. DEPARTMENT OF TRANSPORTATION.

BIRDSONG, Judge.

This is an appeal by Simmerman, the lessee and operator of a Shell oil station, formerly located at Windy Hill Road and I-75 at Atlanta, and condemned by the Department of Transportation (DOT) for expansion of the expressway. DOT valued the property at $369,565 and paid this amount into the court registry. Eventually Shell decided it was satisfied with this amount as just and adequate compensation and moved the court to disburse the funds to Shell. Appellant Simmerman had interposed a claim for his leasehold interest in the award.

Shell contends Simmerman has no claim to part of the $369,565 award because in the lease agreement, Simmerman assigned his

leasehold interest to Shell in the event of a condemnation; and further, that Simmerman has no compensable (valuable) leasehold interest in any event. The trial court considered affidavits of the parties and issued the following order: that the clerk of court disburse the total moneys to Shell "without prejudice to any appeal for additional compensation filed by any Condemnee.... Upon motion of Shell Oil Company, it is hereby further ordered that . . . final JUDGMENT be entered in favor of Shell Oil Company against the Department of Transportation and L. E. Simmerman. . . ."

Simmerman appeals; and DOT interjects in brief that although it has no wish to meddle in a dispute between two condemnees, since the trial court's order fails to make a clear finding as to the leasehold interest of Simmerman, it could leave DOT open to future actions wherein "appellant [might] recover a judgment for the value of its claimed leasehold and Shell Oil Company, having been discharged with compensation for an unencumbered fee, could not be required to adjust its compensation consistent with the jury verdict." *Held:*

1. The pertinent terms of Simmerman's lease with Shell Oil are: "Para. 11. UNDERLYING ESTATES—CONDEMNATION. If all or part of the premises is condemned . . . 'Lessee assigns to Shell all of Lessee's right to or interest in any award or settlement for such condemnation . . . subject to Lessee's right to receive a portion of such compensation from Shell if and as required by law."

We find no uncertainty or ambiguity in this language. The lease "assigns *to Shell* all of lessee's right or interest in any [award for condemnation], *subject to* Lessee's right to receive a portion of such compensation *from Shell* if and as required by law." (Emphasis supplied.) In other words, any right and interest that the lessee might otherwise independently assert against the condemnor is assigned *to Shell* to collect without contest or intervention by the lessee — not absolutely but merely as a condition subsequent, i.e., "subject to" the lessee's right to a portion of the award if and as required by law, which portion the lessee may get *from Shell,* not from the condemnor. The assignment makes no distinctions: all the lessee's right or interest in *any* compensation for condemnation is assigned to Shell to collect or not as Shell chooses; but he retains his right to a share of whatever Shell does collect, if the law declares ("requires") he has a compensable interest in it.

It is earnestly contended by Shell that *Henson v. Dept. of Transp.,* 160 Ga. App. 521, 522 (287 SE2d 299) controls this case. The lease in *Henson* assigned to the lessor Amoco, " 'any award, claim or demand whatsoever to which the lessee may be entitled by reason of such taking, other than moving expenses to which lessee may be specially entitled by law.' "

The clear and fatal difference between this case and *Henson* is that in *Henson,* the lessee unequivocally assigned any condemnation award or claim "whatsoever" except for moving expenses and this absolute assignment was not made "subject to" any right to share; but the assignment in this case was made "subject to Lessee's right to receive a portion of [any award or settlement]," from the lessor, "if and as required by law." Shell dismisses this language in Simmerman's lease by saying that the only *requirement of law* in these condemnation circumstances is the requirement of the Federal Petroleum Marketing Practices Act (15 USCA § 2801 et seq.), which regulates petroleum franchise and marketing practices, and which requires that Shell "fairly apportion" between itself and a dealer (Simmerman) any recovery "if received" by Shell for loss of business (15 USCA § 2802 (d) (1)). This contention is spurious on its face. The federal law regulating petroleum marketing franchises is special legislation which does not expressly prohibit the franchisee from seeking business losses but seems to presume that the right to receive business loss compensation is a right of the franchisor. As a privilege it grants the franchisee a right to share in a business loss award "if received" by the franchisor. The federal act concerns franchise and marketing rights only. It does not touch upon or obliterate the State constitutional requirement that just and adequate compensation be paid to any condemnee for a property interest including a leasehold interest (Ga. Const., Art. I, Sec. III, Par. I (Code Ann. § 2-301)). *Ammons v. Central of Ga. R. Co.,* 215 Ga. 758 (113 SE2d 438). As DOT helpfully suggested, the property was compensated for as an unencumbered fee; but it is not an unencumbered fee, and if the jury finds the encumbrance to be of any value, the lessee Simmerman is entitled to it under Georgia law.

Nevertheless, Shell unilaterally asserts that the reservation clause was intended to apply only to the federal law requirement that business losses awards be apportioned. But unlike the clear language regarding moving expenses in *Henson,* this clause makes no such limitation or reference, nor even gives the slightest clue that the lessee's right to receive his portion was intended by the parties to be limited only to business losses.

Shell argues further that if the assignment of all right and interest in a condemnation award "subject to Lessee's right to receive a portion of such compensation if and as required by law" is permitted to retain to Simmerman a leasehold interest, the interpretation would illogically paraphrase thusly: "Appellant hereby assigns to Shell any condemnation award he receives representing leasehold interest, provided however that appellant does not assign to Shell any condemnation award he receives

representing leasehold interest because condemnation law allows appellant to claim a leasehold interest as compensation." We agree that if the assignment language held this meaning, it would be meaningless. But in the first place, since the assignment language makes no distinctions as to type of award, Shell might just as easily, with even worse logic and no better reason, pose the same argument if the lessee were seeking business losses: "Appellant hereby assigns to Shell any condemnation award he receives representing business losses, provided however, that appellant does not assign to Shell any condemnation award he receives representing business losses because the federal petroleum marketing practices act requires Shell to apportion business losses with appellant if Shell receives any business losses." In the second place, if the language is so uncertain and ambiguous as to be susceptible to such an analysis, every rule of contract interpretion, landlord-tenant law, and summary judgment procedure would require us to interpret this clause in favor of the lessee Simmerman and against the lessor Shell, who prepared the contract language. OCGA § 13-2-2 (Code Ann. § 20-704); see also *Farm Supply Co. v. Cook,* 116 Ga. App. 814 (159 SE2d 128).

As we have held, we do not find any such ambiguity in the assignment provision. The language does not absurdly assign any award to Shell and then take it back; it assigns to Shell the very substantial right to collect and receive (or not to collect and receive) compensation as it chooses, without interference by the lessee, and retains only the right to receive from Shell the lessee's lawful portion. To adopt Shell's argument that the provision validly assigned the right to collect and keep Simmerman's leasehold interest or other property interest, but did not assign the right to collect business losses or some other incorporeal award, would be to invent words and distinctions which the language nowhere provides or even implies. The whole term must be construed together with meaning given to every clause; the entire assignment of *any* award was made "subject to lessee's right to receive a portion of such compensation from Shell if and as required by law." To hold that the lessee had no such right with regard to leasehold interests would be to arbitrarily render that phrase meaningless as to one interest.

In fact, we think it is likely that the interpretation we give this language is precisely what Shell may have intended, for it operates to Shell's advantage particularly with respect to business losses. Shell has announced its intention not to pursue an award for business losses, but suggests that the reservation clause permits Simmerman to seek business losses if he so chooses. But in fact if Simmerman attempted to do so, Shell or DOT might contend under the unambiguous terms of the lease as stated above, that the lessee has no

right to collect business losses from DOT, because his only right is to receive a portion *"from Shell if and as required by law,"* which right would be empty because the federal act does not *require* Shell to seek business losses but only requires the franchisor Shell to fairly apportion a business loss award "if any [is] received by the franchisor" (15 USCA § 2802 (d) (1)); and the right to pursue or not pursue such an award has been assigned *"to Shell."* Thus, even the interpretation we give the paragraph would absolutely operate in Shell's favor, if only Shell had not forgot that the lessee may have other rights to condemnation compensation besides business losses.

The trial court's order granting final judgment in favor of Shell against DOT and against Simmerman, guarantees that Simmerman, contrary to the terms of the lease, has no right to receive a portion of the property award from Shell, although the property is encumbered with his leasehold interest and the jury might find it to have value and thus constitutionally entitled to just and adequate compensation. And although the order states it is "without prejudice to any appeal [by Simmerman] for additional compensation" (e.g., business losses), the effect of the contract language guarantees that Simmerman cannot pursue such compensation on his own, unless he can act in equity pursuant to 15 USCA § 2805 (b) to force Shell to collect business losses and fairly apportion them, about which we express no opinion.

Under the law and the clear language of the lease, Simmerman has the right to receive, for his lawful leasehold interest, a portion of any property award received by Shell.

2. Shell contends that in any case the leasehold has no value, because under Georgia law the value of a leasehold interest is the rent that the property could have demanded less the rent actually paid (*Minsk v. Fulton County,* 83 Ga. App. 520 (64 SE2d 336)), and Shell's expert stated that he is familiar with "the rentals . . . paid by dealers at similar service stations in the metropolitan Atlanta area, and the rental [paid by Mr. Simmerman] is slightly above the current market rental rate for similar service stations."

However, Mr. Simmerman states by affidavit that he has leased and operated this Shell service station for fifteen years; that his operation of it "was extremely profitable and [that Simmerman] had made improvements to the premises and installed certain fixtures"; and that the value of his lease interest is $105,000.

While the rule stated in *Minsk,* supra, may be a factor to be considered, it is not to be applied in a vacuum. See esp. *DeKalb County v. Fulton Nat. Bank,* 156 Ga. App. 253 (274 SE2d 649); see also *Southern R. Co. v. Leonard,* 58 Ga. App. 574 (199 SE 433). In *Polk v. Fulton County,* 96 Ga. App. 733, 736 (101 SE2d 736), we said

that all relevant factors must be considered in determining just and adequate compensation, and if the market value of the property does not coincide with the actual fair market value of the property (as compared with others), the value may be the fair and reasonable value of the particular property taken. Anything that enhances the value of the property may be considered (*Dept. of Transp. v. Arnold,* 154 Ga. App. 502 (268 SE2d 775); *Dept. of Transp. v. Driggers,* 150 Ga. App. 270 (257 SE2d 294)), including improvements (*Dept. of Transp. v. Brooks,* 153 Ga. App. 386 (265 SE2d 610)). These rules apply to leaseholds. We do not know what Shell's expert means by "similar stations" whose rental value he compared to the "extremely profitable" station which Mr. Simmerman operated for fifteen years. As to the effect of such opinion evidence on summary judgment proceedings, see *Ginn v. Morgan,* 225 Ga. 192, 193 (167 SE2d 393). The proceedings below being in the nature of a summary judgment, every burden to prove entitlement to judgment is upon the movant Shell, and every benefit of doubt is indulged in favor of the respondent Simmerman. Davis & Shulman, Georgia Practice & Procedure, §§ 9-9, 9-10, 9-11. We will leave it to the jury to determine if the leasehold in this particular property had value, and how much.

*Judgment reversed. Shulman, C. J., and McMurray, P. J., concur.*

DECIDED JUNE 17, 1983—
REHEARING DENIED JULY 11, 1983—

*A. Harris Adams,* for appellant.
*Jeffrey W. Kelley, Charles A. Evans, Eugene G. Partain,* for appellee.

ON MOTION FOR REHEARING.

On motion for rehearing, Shell makes essentially the same arguments it made before, all of which we thoroughly considered and found without merit.

Shell Oil contends, in another vein, that Simmerman had no compensable leasehold interest because the lease provided that the lease could be declared terminated in the event of condemnation, and was so terminated by Shell. 2 *Nichols on Eminent Domain,* § 5.06 [2] at pp. 5-113—5-114, is quoted for authority that "[u]nder such a [condemnation clause in a] lease the tenant has no estate or interest in the property remaining . . . to sustain a claim for compensation. . . ." We do not see much logic in Mr. Nichols' statement. A leasehold is a compensable interest just as is a freehold (*Allen v. Hall County,* 156 Ga. App. 629, 632 (275 SE2d 713)). A taking by eminent domain by

definition ends the property interests of all owners, feeholders and leaseholders alike and that very fact is the reason that the constitution requires payment of just and adequate compensation. Shell would be dismayed if, by Mr. Nichols' logic, we held that since a condemnation leaves a feeholder with "no estate or interest in the property," there is nothing to sustain a feeholder's claim for compensation.

We think that obviously a lessor, for his protection, may put in his lease a clause providing that *as between the parties* the lease is terminated in the event of condemnation, but this does not control Georgia law on the subject of compensability from the condemnor. The condemnation of a leasehold is a matter between the condemnor and the lessee. The lessor by definition has no part in the leasehold value (*Allen,* supra, p. 632), and has no right to decree that the lessee has no leasehold compensation rights from the condemnor by virtue of the fact of condemnation itself. That is "Catch-22" illogic of an extreme degree.

Contrary to Mr. Nichols' suggestion that the lessor can by terminating the lease upon a condemnation dissolve the leaseholder's rights against the condemnor, we have distinctly held in Georgia that the termination of a leasehold interest by condemnation is a compensable taking. *Waters v. DeKalb County,* 208 Ga. 741 (69 SE2d 274); *Ga. Power Co. v. Brooks,* 207 Ga. 406 (62 SE2d 183); *Allen,* supra. This compensability is obviously figured on the basis of what the leaseholder has lost, using all relevant factors including the unique value of the leasehold to the lessee. *Heilman v. Dept. of Transp.,* 162 Ga. App. 547 (290 SE2d 189); *DeKalb County v. Fulton Nat. Bank,* 156 Ga. App. 253 (274 SE2d 649).

DOT in its motion for rehearing requests a holding "as to Simmerman's proper future role in this litigation." We agree that some clarification is appropriate here. It should be obvious from what we held that Shell, having chosen to accept as just and adequate compensation the sum of $369,565, for property that includes a leasehold, must share the proceeds with Simmerman according to the portion of it that represents his leasehold value. Since Simmerman assigned away his right to collect anything at all from the condemnor, Shell may of course accept as just and adequate what is now paid into the registry, whether or not this valuation included the leasehold encumbrance. Simmerman's action to prove that a portion of this represents his leasehold interest, will be against Shell. Simmerman has no right of action against DOT, now or in the future, for this is what he assigned to Shell. In fact, since he assigned his right to make any claim at all against the condemnor, he has no right to claim that what Shell receives is not just and adequate; he only has the right to

receive a portion of whatever Shell collects. If Shell did not collect enough to satisfy itself fully for its fee interest and pay Simmerman his portion as well, that is Shell's disappointment; for under the assignment, Simmerman is entitled to a portion of the property award representing his encumbering leasehold interest even, theoretically, if it comprised the entire amount Shell agreed to accept from the condemnor. DOT does not pay Simmerman; DOT pays Shell and Shell must pay to Simmerman his lawful share. We held in the decision, "we will leave it to the jury to determine if the leasehold in this particular property had value, and how much." The proceeding obviously referred to would be the proceeding between Shell and Simmerman. All of this should have been evident from the import of the decision.

*Rehearing denied.*