[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
MEMORANDUM OF DECISION ON CROSS-CLAIM
Exxon Corporation U.S.A., appealed from an assessment of damages made by the defendant with respect to the taking of a portion of the plaintiff's land, buildings and improvements, all of which appear on a map entitled: "Town of Windsor, Map Showing Land Acquired from Exxon Corporation by The State of Connecticut, Interstate Route 91 (Limited Access Highway), Scale 1" = 40' May 1985, Robert W. Gubala, Transportation Chief Engineer-Bureau of Highways." The parties stipulated that the taking date was CT Page 8 June 17, 1988. The subject taken in fee consisted of a parcel of land which contains 1.10+ acres or 47,916 square feet, together with all buildings, canopy, improvements and appurtenances.
The area of land taken fronts along Kennedy Road for a distance of 310.42+ feet and along Interstate 91 for a distance of 625+ feet. The entire property is in the B-2 Business Zone and its highest and best use, prior to the taking, was its continued use as a self-service gasoline station.
The case was tried to a panel of three State Trial Referees pursuant to General Statutes 52-434a(b). Judgment was rendered for the plaintiff in the amount of $450,000, less the sum of $232,500 previously paid to the plaintiff, or $217,500, with interest from the date, taking to the date of payment, together with costs and an appraisal fee of $2,000. It was ordered that the sum of $217,500 with interest be paid into court and held by the Clerk until further order of the court. Reference for the foregoing is made to the Memorandum of Decision filed January 31, 1990. Subsequently, this sum of $255,502.10 was ordered paid to the plaintiff upon agreement of the parties that the plaintiff would retain the money and pay to New England Self-Serve, Inc. (NESS), any amount ordered by the court after ruling on the latter's cross-claim.
New England Self-Serve, Inc. was given permission to intervene in the plaintiff's appeal, upon its claim that it was entitled to a portion of the damages awarded to the plaintiff as the plaintiff's lessee and franchisee. Thereafter it filed an answer admitting the allegations of the plaintiff's complaint and a cross-claim. In the cross-claim, NESS alleged that it had been lessee of the plaintiff under a three-year written lease from December 1, 1986 and franchisee of the plaintiff for the service station at the location since December 4, 1979. It claimed damages against the plaintiff constituting all funds paid as a result of the condemnation representing payment for loss of leasehold interest, loss of leasehold goodwill, and loss of leasehold business. The plaintiff denied the allegations of the cross-claim and set up as special defenses the following paragraphs of the lease between the plaintiff and NESS:
 "13. CONDEMNATION: any and all payments made by any condemning authority or other wise made pursuant to the power of eminent domain, for or arising from any such taking or for damages to the premises resulting therefrom shall belong and be payable entirely to Exxon, except as otherwise required by law."
CT Page 9
"14. TERMINATION:
 (a) This lease shall terminate: * * * (iii) if all or any part of the premises is condemned or is otherwise taken pursuant to the power of eminent domain; * * * (d) Any termination of this lease shall be preceded by such notice from Exxon as may be required by law."
A motion by the plaintiff that the claims made in the complaint and in the cross-claim be bifurcated and the claim against it by NESS be deferred was granted on January 11, 1990, by the panel which heard the underlying case.
The plaintiff and NESS have agreed that the issues between them be adjudicated under the existing pleadings pursuant to the provisions of General Statutes 48-21, and that the court may determine the rights of NESS, if any, in the final condemnation awarded to Exxon under its appeal pursuant to General Statutes 13a-76 as though Exxon were plaintiff and NESS were defendant. See Stipulation filed February 6, 1990.
The plaintiff's appeal for reassessment of damages was brought pursuant to General Statutes 13a-76. General Statutes48-21 provides that in case of dispute as to the amount due any encumbrancer in such a proceeding, the court may determine the rights of the parties in the sum awarded for the taking of the property. As a general rule, we do not allow any claims related to goodwill or lost business value. Wronowski v. Redevelopment Agency, 180 Conn. 579, 584, 430 A.2d 1284 (1980); Shell Oil Co. v. Commissioner of Transportation, Docket Number 350356, Superior Court Judicial District of Hartford/New Britain at Hartford, Memorandum of Decision dated September 21, 1989. We have allowed damages to a lessee based upon the fair market value of his leasehold interest in the condemned property. See Shell Oil Co. v. Commissioner of Transportation, supra. We must therefore analyze the legal effect of the two special defenses interposed to the cross-claim.
Paragraph 14 of the lease provides for termination of the lease if all or any part of the premises is condemned. The plaintiff claims that this provision operates to terminate the lease immediately upon condemnation and that thereupon the leasehold interest ceases to have any value at all. This claim overlooks the requirement in paragraph 14(d) of the lease CT Page 10 that any termination of the lease shall be preceded by such notice as may be required by law. A provision in a lease that the lease will terminate upon condemnation is nothing more than a statement of the obvious, for in fact all rights of ownership and possession are terminated by condemnation. It is precisely for the taking of those rights that compensation is paid by the state. See Simmerman v. Department of Transportation, 167 Ga. App. 383,307 S.E.2d 4 (1983).
The date of taking was June 17, 1988. The plaintiff sent a letter to Mr. George Salz, president of NESS, on June 29, 1988, notifying him that the lease automatically terminated upon condemnation. (Exhibit B). In that letter, the plaintiff informed NESS that it would continue its franchise relationship until the Department of Transportation assumed its right to possession and that by continued occupancy and use of the premises, NESS would be assumed to agree and would remain as a tenant at will. NESS continued to occupy the premises until December 31, 1988, and to pay rent to the plaintiff through August, and thereafter through December both to the plaintiff and to the state. Thus the plaintiff recognized the continuing leasehold interest which NESS had in the premises after the date of taking.
The plaintiff also claims that paragraph 13 of the lease entitles it to the entire amount of the award because under paragraph 13 all payments for the taking or for damages resulting therefrom to the premises belong entirely to EXXON "except as otherwise required by law". The plaintiff asserts that the phrase "except as otherwise required by law" means only that pursuant to the Petroleum Marketing Practices Act (PMPA), the gasoline station dealer has an unwaivable right to compensation for goodwill or lost business value if those values are included in a compensation award. Putting aside the purpose of the Petroleum Marketing Practices Act, 42 U.S.C. § 2801 et seq., which was intended to protect a franchisee from arbitrary or discriminatory termination or non-renewal, Connecticut recognizes that a leasehold interest has value. We think that the plaintiff's reading of the phrase referred to is too restrictive.
The lease was drawn by the plaintiff and it is basic contract law that in the event of ambiguity, the language is to be construed against the one who drew it. The lease was drawn by the plaintiff and presented to NESS to accept as it was without negotiation of the terms. The condemnation award includes compensation for every interest in the property taken by the state. We do not accept an interpretation of the phrase under consideration which would permit the plaintiff to accept rent for the leasehold interest after the date of taking during the time NESS remained in possession and to claim the entire award, including compensation for the taking of the leasehold interest. Under CT Page 11 paragraph 13, the plaintiff is required by law to pay to NESS the portion of the total award which represents payment for the leasehold interest.
The lease between the parties ran for three years from December 1, 1986 to December 1, 1989. It was one of a series of three-year leases and the franchise agreement between the parties could not be arbitrarily terminated. In this case, the parties could not have entered into another three-year lease because the property has been condemned.
The appraiser for NESS, R. Peter Drennan, calculated the value of the lessees's rights taken as $281,496. He based this upon projected annual net income capitalized over an assumed 10-year period of occupancy. He reported that his calculation included rent savings of $159,070.
Peter R. Marsele appraised the property for the plaintiff and was called by it as a witness. He considered that the leasehold interest had no value because it was not producing a volume of business sufficient to have an economic rent in excess of the contract rent. Nevertheless, he conceded that the business was a profitable one in a profitable location.
In the underlying action, the panel assessed damages from the taking of the plaintiff's property in the amount of $450,000. It predicated this award upon its conclusion that "[t]he highest and best use of the appraised property, prior to the taking, [was] its continued use as a self-service gasoline station." NESS was the operator of this self-service gasoline station at the time of the taking of the property, and the leasehold interest under which it operated was a factor in the condemnation award of $450,000.
Based upon the testimony, the exhibits, the appraisals and our own knowledge of the elements constituting value, we find the fair market value of the leasehold interest taken to be $29,000.
Accordingly, a supplemental judgment may be rendered for New England Self-Serve, Inc. to recover from Exxon Corporation, U.S.A. the sum of $29,000 out of the award previously rendered, with interest from December 31, 1988, to the date of payment together with costs.
GEORGE D. STOUGHTON WILLIAM C. BIELUCH MAURICE J. SPONZO STATE TRIAL REFEREES CT Page 12