A91A0959. DEPARTMENT OF TRANSPORTATION v. CALFEE COMPANY OF DALTON, INC.
(414 SE2d 268)

BIRDSONG, Presiding Judge.

In May 1989, appellant/condemnor Georgia Department of Transportation (DOT) condemned .037 acres of land located in Catoosa County near Interstate 75 on Cloud Springs Road for the purpose of restructuring a problem interchange. At the time of condemnation, a convenience store was located on the property. The real estate was owned by A. Bernice Calfee (wife) (a/k/a Bernice Calfee) and Priscilla Calfee Mowles (daughter of George E. Calfee from a previous marriage), as Trustees under a trust established by George E. Calfee (husband) for the benefit of Tracie Lynn Calfee (George's and Bernice's minor child), and was leased by appellee/condemnee Calfee Company of Dalton d/b/a Favorite Markets in October 1981. The

property lease lists the lessor as B & T Properties, and the lease was signed in behalf of B & T by Bernice Calfee and in behalf of Calfee Company by George E. Calfee. B & T Properties, apparently was intended to be established as some type of trust estate for Bernice Calfee and Tracie Calfee. It was testified that B & T was formed as a partnership composed of A. Bernice Calfee and Tracie Lynn Calfee, with Priscilla Calfee Mowles acting as Trustee of Tracie; appellee conducted business with B & T properties only through Bernice Calfee and with no one else.

Favorite Markets built and operated a convenience store on the leased land; and billed Bernice and Tracie for the building shell. In December of 1981, Favorite Markets was sold by "sellers," George Calfee, Bernice Calfee, and Priscilla Calfee Mowles, as Trustee of the trust established for Tracie Calfee, to Seaboard Operating, which was an investment company. The purchase and sale agreement expressly states, without contradiction of record, that the sellers "are the holders of all the issued and outstanding common capital stock of Calfee Company of Dalton, Inc." Before this sale was consummated, it was insisted that a fixed amount of rental for the ten-year lease renewal be established and this was done by a lease agreement schedule incorporated into the purchase and sale agreement.

Prior to trial, the property owners accepted the amount offered to them by DOT as the value of an unencumbered fee for the subject property, leaving the leasehold interest in dispute. Compare *Simmerman v. Department of Transp.*, 167 Ga. App. 383, 384 (307 SE2d 4). Immediately preceding trial, DOT filed a motion in limine, which inter alia sought to prohibit the tenant from presenting any evidence of the value of its leasehold interest. At the close of the evidence, DOT moved for a directed verdict on the issues of the leasehold interest and business losses. The trial court denied that motion. The jury returned a verdict in favor of the tenant, awarding it $100,000 for its leasehold interest and $6,275 for moving expenses. The jury also found that the business was not unique resulting in no entitlement for award based on business losses. DOT moved for a new trial or alternatively for judgment notwithstanding the verdict. The trial court also denied that motion. DOT appeals from the denial of this motion and from the verdict of the jury. DOT does not except to the award of moving expenses. *Held:*

1. DOT contends that the effect of paragraph 18 of the applicable lease was to assign to the landlord all claims which the tenant had for the value of the leasehold. We disagree.

The lease provision merely provides: *"Condemnation.* In the event any part or all of the premises shall be taken for any public or quasi-public use under any statute or by right of eminent domain or private purchase in lieu thereof by a public body vested with power of

eminent domain then, when possession shall have been taken thereunder of the premises or any part thereof, this lease shall *terminate* and all rights of the tenant hereunder shall immediately cease and terminate, and the accrued rent shall be paid up to the time of such termination and the tenant shall have *no claim against the landlord* for the value of the unexpired term hereof and the tenant shall not be entitled to any part *of the condemnation award or purchase price."* (Emphasis supplied.)

The language used in the lease provision is not ambiguous. The trial court has the responsibility to interpret lease provisions, such as this, as " '(t)he construction of the provisions of (a) lease . . . is generally (a question) for the court to determine as a matter of law.' [Cits.] As a general rule the provisions of a contract will be construed against the draftsman, and those of a lease will be construed against the lessor. [Cits.] Where the language of a contract is clear, unambiguous, and capable of only one reasonable interpretation, no construction is necessary or even permissible." *Stern's Gallery v. Corporate Property &c.*, 176 Ga. App. 586, 593 (4) (337 SE2d 29). The interpretation of this lease provision should be governed by the intent of the parties as expressed in the entire lease contract. See *Peachtree &c. Investors v. Reed Drug Co.*, 251 Ga. 692 (1) (308 SE2d 825). And, where as here, the terms of the written lease are clear and unambiguous, the court will look to the lease alone to find the intention of the parties. *Health Svc. Centers v. Boddy*, 257 Ga. 378, 380 (359 SE2d 659). Not to be neglected, however, is the rule that provisions in leases which result in a forfeiture of a tenant's possessory rights will be *strictly construed* against the lessor. *Peachtree &c. Investors*, supra.

Applying these well-established principles of law to the lease provision in its entirety, it appears that the provision in question provides, inter alia, for the termination of the lessee's possessory rights in the event of a condemnation of the premises, and therefore should be strictly construed. Additionally, the provision provides that the appellee lessee shall have no claim *against the landlord* for the unexpired lease term *and* shall not be entitled to any part *of the condemnation award* or purchase price. Strictly construing this provision, we find that on its face it neither waives any and all claims arising from the lease termination nor does it assign any and all condemnation awards or claims, whatsoever, to the landlord. Rather, only certain express and limited claims against the *landlord* are waived, and the only *assignment* if any, which, and then only by means of liberal rather than strict interpretation, can be said to have been created is an assignment by the lessee to the landlord of any claim or entitlement to the condemnation award or purchase price which the landlord received for the taking of their property. The intent of the parties remains

clear that the lessee at most was renouncing the right to assert any right of entitlement to any condemnation award received by the landlord for the latter's separate condemnation claim for the taking of their property.

The dissent's reliance on *Henson v. Dept. of Transp.*, 160 Ga. App. 521 (287 SE2d 299), is misplaced. In *Simmerman v. Dept. of Transp.*, supra at 385 (1), we distinguished *Henson* by concluding that "in *Henson*, the lessee unequivocally assigned any condemnation award or claim 'whatsoever' except for moving expenses. . . ." In the case at bar, however, the limiting language of the lease provision establishes on its face that the lessee did not unequivocally assign any condemnation award or claim "whatsoever" to the landlords. Therefore, *Henson* is neither controlling nor persuasive.

Moreover, assuming arguendo this leasing provision had been ambiguous, we would then be required to construe the provision against the lessor (*Stern's Gallery*, supra); and, where a leasing provision is capable of being construed in two ways, it will be construed against a lessor preparer and in favor of a lessee non-preparer (*Hertz &c. Rental Corp. v. Evans*, 260 Ga. 532, 533 (397 SE2d 692)). Construing the lease provision against the lessor, the same interpretation as reached above would apply.

2. The option to renew contained in the lease pertinently provided that: "Tenant shall . . . have the option to renew this lease for an additional ten (10) year period by giving landlord notice of its intent to renew in writing not later than three (3) months prior to the expiration of the original term of this lease. Tenant shall pay to landlord as rental during the renewal period upon terms that are mutually agreeable."

DOT asserts that the attempted extension of the lease was invalid due to lack of certainty of its terms. *Pause v. City of Atlanta*, 98 Ga. 92 (6) (26 SE 489), overruled in part on other grounds, *Bowers v. Fulton County*, 221 Ga. 731, 738 (146 SE2d 884); *Cann v. MARTA*, 196 Ga. App. 495 (1) (396 SE2d 515); but compare *Thornton v. Ellis*, 184 Ga. App. 884, 885 (1) (363 SE2d 584).

The option to renew on its face appears to be uncertain within the meaning of *Pause* and *Cann*. Accordingly, unless the option to renew was modified effectively so as to remove the uncertainty or a new enforceable lease entered before the expiration of the original term of the lease in question, the purported lease extension would be unenforceable; and, insofar as the purported extension of the lease is concerned, condemnees would have no legally compensable interest therein upon the condemnation of the property — condemnor would not be obliged to compensate condemnees for property in which they had no interest (*Cann*, supra at 496).

Appellees contend that certain subsequent agreements were en-

tered establishing a ten percent increase in the rental rate either modifying the lease and making it enforceable or constituting a new leasing agreement. DOT contends these agreements were unenforceable as they failed to comply with the statute of frauds. As the original lease was for a term in excess of one year and therefore was required to be in writing (OCGA § 13-5-30), any modification thereto likewise had to be in writing. *Littman v. Suburban Opticians*, 244 Ga. 702, 705 (261 SE2d 607).

The purchase and sale agreement, pertaining to the sale of Calfee Company of Dalton, was executed in December of 1981 between the Calfee family and Seaboard, and in addition to being signed on behalf of Seaboard by its president, was signed by George, Bernice, and Priscilla Calfee Mowles, as trustee. (The record does not reflect that any member of the Calfee family has ever sought to challenge or repudiate the terms of this agreement.) Incorporated by reference into this agreement was a written lease agreement schedule of Calfee Company of Dalton. This schedule lists lease maturity date as July 1, 1991, the annual base rental of said property at $24,000, and provides, inter alia, that the lease of the property is renewed under the terms of "1-10 yr. @ 10% rental increase." The record also contains a written letter, dated March 22, 1989, addressed to B & T Properties, Attention: Bernice Calfee, and signed by the attorney representing Favorite Markets. This letter of memorandum refers to the subject lease agreement for the store in question, and identifies on its face the parties of Favorite Markets and B & T. The letter further purports to confirm the agreement entered by Favorite Markets and Bernice Calfee — the latter apparently acting on behalf of B & T as was consistent with her signing of the original lease. The letter of memorandum then expressly memorializes the renewal period of the lease as ten years and the rate of rental increase as a ten percent increase over the present lease arrangement commencing in July 1991 — the renewal rental fee being expressly stated as "$2,200 per month for the next ten (10) years." The letter of memorandum was on law firm letterhead and signed by the attorney for Favorite Markets. The vice president of finance of Favorite Markets testified that this letter was prepared by the attorney at her request on behalf of Favorite Markets. We note that appellant has not enumerated as error the ruling of the trial court overruling appellant's objection to the admission of this letter. Accordingly, this issue will not be addressed on appeal. *Roberts v. Cotton States Mut. Ins. Co.*, 186 Ga. App. 371, 373 (2) (367 SE2d 272).

OCGA § 13-5-30 pertinently provides: "To make the following obligations binding on the promisor, the promise must be in writing and signed by the party to be charged therewith *or some person lawfully authorized by him*: . . . (5) Any agreement that is not to be

performed within one year from the making thereof." (Emphasis supplied.) Thus, any modification of the original written lease or new lease contract for a new ten-year term would have to be in writing.

In Georgia, compliance with the statute of frauds may be established by either one or a series of related documents. See generally *Lipsey Motors v. Karp Motors*, 194 Ga. App. 15 (1) (389 SE2d 537); *Houston v. Jefferson Standard &c. Ins. Co.*, 119 Ga. App. 729, 732 (a) (168 SE2d 843). Where the memorandum of the bargain is found, as here, on separate pieces of paper, and where these pieces of paper contain the whole bargain, they form together such memorandum as will satisfy the statute of frauds, provided the contents of the signed paper make such reference to the other paper or papers so as to enable the court to construe the whole of them together as containing all the terms of the bargain. *Houston*, supra at 732 (a). In this case, the documents in question sufficiently made reference to the basic lease agreement so as to enable the court to ascertain the intent of the parties thereto and to construe them together as one complete whole. The writings when construed together adequately disclosed the contract subject matter, the parties thereto (both promisee and promisor), and all terms and undertaking thereof. See generally *Cashin v. Markwalter*, 208 Ga. 444, 446 (3) (67 SE2d 226); *F & W Grand &c. Stores v. Eiseman*, 160 Ga. 321, 325 (1) (127 SE 872). When the documents are construed together, it is apparent that the parties intended and effected a written modification of the original lease, based on new consideration (lease renewal for ten years at a specific and increased rental rate), so as to render the renewal provision of the lease certain and enforceable between the parties to the lease. Compare *Lipsey*, supra at 16 (1).

Appellant asserts that "Priscilla Calfee Mowles' signature did not appear on the Buy-Sell Agreement"; but cites us to no page in the record to support that contention. Our examination of the record reveals that, in addition to sellers George E. Calfee and A. Bernice Calfee, Priscilla Calfee Mowles also in fact signed, as Trustee, the master purchase and sales agreement with Seaboard; and this *signed* document intentionally and effectively incorporated by reference the lease agreement schedule of Calfee Company of Dalton. Appellant having failed to cite us to a specific portion of the record containing contrary facts or facts establishing that Priscilla Calfee Mowles ever owned all or part of the subject property in her *individual* capacity, we find its implied assertion as to this matter without merit. It is not the function of an appellate court to cull the record on behalf of a party in search of error. *Manderson & Assoc. v. Gore*, 193 Ga. App. 723, 733 (8) (389 SE2d 251), citing *Armech Svc. Co. v. Rose Elec. Co.*, 192 Ga. App. 829, 830 (386 SE2d 709).

The record reflects that at the instant when this document was

executed all of the outstanding common stock in Calfee Company was held by the sellers. Further, at this same point in time, legal title to the property in question was vested in A. Bernice Calfee and Priscilla Calfee Mowles, as Trustee; and, the record reflects this ownership of the property also was the subject of a stipulation in the pretrial order. DOT has not contested on appeal the issue of legal ownership of the property, and in fact conceded in its brief that "at the time of condemnation, the property was owned by A. Bernice Calfee and Priscilla Calfee Mowles, as Trustees under a Trust established by George E. Calfee for the benefit of Tracie Lynn Calfee, a minor child."

Also, appellant has not affirmatively argued in its brief or cited authority to establish that Priscilla Calfee Mowles, as Trustee, lacked authority to execute any of the documents to which her name is affixed or that she, in any manner, acted without the scope of her authority as Trustee of the trust created in behalf of Tracie Lynn Calfee. (We note that the trust document, contained in the record was executed in July of 1980, and vested, inter alia, the Trustee with all the powers incorporated by reference from Ga. Code Ann. § 108-1204 (1)-(31) (OCGA § 53-15-3, repealed effective July 1, 1991). Ga. Code Ann. § 108-1204 (8) (e) & (k) vested in the Trustee, among the powers to manage property, the broad power "[t]o lease the property or part thereof . . ." and "[t]o modify, renew, or extend leases," respectively.) Accordingly, assuming arguendo any genuine issues had existed as to these matters, such issues are deemed to be abandoned. Likewise abandoned is any issue whether Bernice Calfee lacked authority to enter lease agreements, and lease modifications on behalf of B & T Properties; whether Bernice Calfee otherwise acted beyond the scope of her authority therewith in entering the lease in behalf of B & T Properties or in negotiating the subsequent lease renewal with the representative of Favorite Markets; and, whether the authority of an agent to make a memorandum required by the statute of frauds must be in writing or can be conferred by parol. Court of Appeals Rule 15 (c) (2). Regarding the validity of the letter signed by counsel as a memorandum executed pursuant to the statute of frauds, the issue as raised and affirmatively argued in appellant's brief is that "a letter written by counsel for Favorite Markets also *was not signed by* Bernice Calfee or Priscilla Calfee Mowles." (Emphasis supplied.) This argument likewise is inadequate to preserve on appeal the distinct and separate issues as to the type of authority required by an *attorney* to sign, as a "person lawfully authorized" to do so under OCGA § 13-5-30, a memorandum in behalf of his *client* that would comply with the statute of frauds, and whether Mr. Tuggle in fact had obtained such authority.

In view of this posture of the appeal, we find appellant's second and third enumeration of error, as crafted and argued, to be without

merit. The burden is on the party appealing to craft his enumerations of error, appellate argument and citations of authority in such a manner as to preserve for appeal all pertinent appellate issues. When this is not done, an appellate court should not intercede in favor of a particular party litigant.

Additionally, assuming arguendo, the record had affirmatively established that any of the parties signing as agents, trustees, or partners lacked the authority to enter these particular memorandums for purposes of the statute of frauds, we are satisfied that based on the familial and business relationships existing between the Calfees, the inextricable linkage existing between these parties and the various legal entities which they owned, controlled, or sold, the actions of attorney Tuggle taken under at least the oral direction of the vice president of finance for Favorite Markets, and the reliance that the various parties placed on the apparent authority of those with whom they were dealing to execute the documents in question, that both B & T and Favorite Markets, the parties to this lease and its subsequent renewal, have by their own conduct waived as a matter of law their right to contest the enforceability of the lease renewal for the ten-year period at a rental increase of ten percent effective July 1, 1991. See generally *Mauldin v. Weinstock*, 201 Ga. App. 514 (4) (411 SE2d 370) (1991). As neither party to the lease can assert the lack of enforceability of the lease renewal against the other, as to them it would be an enforceable lease renewal. Accordingly, DOT cannot assert that the lease provision is unenforceable within the meaning of *Pause* and *Cann*, supra, when the parties thereto were legally obliged to comply with the terms of the renewal through operation of the doctrine of waiver.

*Judgment affirmed. Sognier, C. J., McMurray, P. J., Beasley, J., and Judge Arnold Shulman concur. Carley, P. J., Pope, Cooper and Andrews, JJ., dissent.*

POPE, Judge, dissenting.

I cannot agree with the majority's conclusion that in paragraph 18 of the applicable lease the lessee did not assign its right to condemnation proceeds for the value of its leasehold interest to the property owners. That paragraph provides: "18. *Condemnation.* In the event any part or all of the Premises shall be taken for any public or quasi-public use under any statute or by right of eminent domain or private purchase in lieu thereof by a public body vested with power of eminent domain then, when possession shall have been taken thereunder of the premises or any part thereof, this Lease shall terminate and all rights of the Tenant hereunder shall immediately cease and terminate, and the accrued rent shall be paid up to the time of such termination and the Tenant shall have no claim against the Landlord

for the value of the unexpired term thereof and *the Tenant shall not be entitled to any part of the condemnation award or purchase price*." (Emphasis supplied.)

The plain language of that paragraph assigns to the landlord *any claim* the tenant might have in a condemnation action, including a claim against the condemnor for the value of its leasehold interest. Under the terms of paragraph 18, the property owners were entitled to the value of an unencumbered fee in the property condemned, including the value of the tenant's leasehold interest. See *Henson v. Dept. of Transp.*, 160 Ga. App. 521 (1) (287 SE2d 299) (1981); cf. *Simmerman v. Dept. of Transp.*, 167 Ga. App. 383 (1) (307 SE2d 4) (1983) (tenant reserved the right to recover from the lessor any compensation from the condemnation proceedings which the tenant was entitled to by law).

Relying on this agreement, which was freely entered into by Calfee Company with the property owners[1] and that assigns to the property owners any compensation received for property interests in the subject property in a condemnation action, DOT offered to the property owners the value of an unencumbered fee. The property owners, who apparently believe that they are entitled to the value of an unencumbered fee under the terms of the lease, have withdrawn those funds. Now the tenant, who clearly relinquished its right to seek condemnation proceeds, seeks additional funds from DOT.[2]

In light of the majority decision, condemnors will no longer be able to rely on the clear contract provisions concerning assignment of rights of condemnation proceeds, but will be forced to have the property appraised as both an unencumbered fee and an encumbered fee with a leasehold interest and seek court direction concerning which party is entitled to compensation.

I am authorized to state that Presiding Judge Carley, Judge Cooper and Judge Andrews join in this dissent.

DECIDED NOVEMBER 27, 1991 —
RECONSIDERATION DENIED DECEMBER 19, 1991 — 

*Michael J. Bowers, Attorney General, H. Perry Michael, Executive Assistant Attorney General, Harrison W. Kohler, Roland F.*

---

[1] The majority's conclusion the pertinent contract language must be construed against the lessor is erroneous under the facts of this case. The lessor is not a party to this dispute. Furthermore, the pertinent contract language does not provide for termination of the lessee's possessory interest, it only discusses who should receive any condemnation proceeds.

[2] This case presents the same factual situation that caused DOT to seek to intervene in the dispute between the lessor and lessee concerning which party was entitled to the value of the leasehold interest in *Simmerman v. Dept. of Transp.*, 167 Ga. App. 383, 384, supra.

*Matson, Senior Assistant Attorneys General, Kinney, Kemp, Pickell, Sponcler & Joiner, Henry C. Tharpe, Jr.*, for appellant.
*McCamy, Phillips, Tuggle & Fordham, Joseph T. Tuggle, Jr., Gearhiser, Peters & Horton, Robert L. Lockaby, Jr.*, for appellee.