40100, 40102. PEACHTREE ON PEACHTREE INVESTORS, LTD. et al. v. REED DRUG COMPANY (two cases).
40101. REED DRUG COMPANY v. PEACHTREE ON PEACHTREE INVESTORS, LTD. et al.

CLARKE, Justice.

These cases involve the interpretation of provisions in a lease agreement, whether the lessor has breached the agreement and, if a breach has occurred, whether the trial court was correct in finding equitable relief is inappropriate. We agree with the court below that the agreement was breached and hold that monetary damages are appropriate.

The lease was executed between the Reed Drug Company (Reed) and Georgia Baptist Homes, Inc., as lessor, for spaces known as 174 and 178 Peachtree Street which are located on the first floor of the Winecoff Hotel Building. In May of 1981 the building was sold to Ackerman & Company, subject to Reed's lease. Ackerman & Company later transferred its interest to Peachtree on Peachtree Investors, Inc., a limited partnership of which Ackerman & Company is the general partner. These entities were named along with others as defendants below in the suit brought by Reed and will be referred to collectively as "Ackerman" for purposes of this opinion.

The provisions of the lease which are at issue and controlling in this case are as follows:

"Notwithstanding anything in this Lease to the contrary, if

either the present Lessor, or a purchaser of the property and Lease from Georgia Baptist Homes, Incorporated, Lessor [Ackerman's predecessor in interest], wishes to demolish the building in which the leased premises are located, this Lease shall terminate nine (9) months after a written notice has been given Lessee by either Lessor or such Purchaser, stating its intent to demolish or substantially demolish said building.

"In the event, even after such notice is given, Lessor or the Purchaser fails to begin said demolition within a reasonable time after the expiration of the nine (9) months period, Lessor shall not be entitled to rent the premises to any third party without first giving Lessee an option to re-occupy said premises at the same rental rate and under the same terms and conditions as provided by the Lease, said right extending to the termination of the Lease on February 28, 1985.

"The intent and purpose of the foregoing provisions are to enable Lessor to demolish its building at any time or to sell said premises and building to a purchaser who wishes to demolish same for purpose of development."

Reed had sublet the 174 Peachtree space since 1975 and had sublet the 178 Peachtree space since 1979. On June 25, 1981, Ackerman gave notice by letter to Reed that Ackerman "has a present intent to demolish" the building and was invoking the termination provisions of the leases requiring Reed to vacate the premises within nine months. Reed in turn notified its subtenants, Jim Lee, who sublet the 174 space, and Georgia Pacific Corporation, which sublet 178, that their leases would terminate in March of 1981. The 178 space was sublet by Georgia Pacific Corporation to Bank of the South.

In October of 1981 an article appeared in the Atlanta newspapers stating that Ackerman's plan for the Winecoff Hotel was to renovate the building and convert the hotel into an office building. Reed notified Ackerman by letter that the notice of termination was invalid since there was no intent to demolish the building and that Reed expected compliance with the original lease terms to terminate in February of 1985. Through its counsel, Ackerman replied to Reed stating the intention had been and continued to be to "demolish or substantially demolish the building." A separate agreement was reached between Ackerman and Georgia Pacific and its sublessee, Bank of the South, to allow Bank of the South to occupy the Winecoff from April until October of 1982 for three times the rental amount which was required under Reed's lease. Jim Lee was permitted by Ackerman to remain in 174 until August of 1982.

In February of 1982 Reed filed this action against Ackerman and

others alleging the provisions of its lease had been violated and seeking monetary damages, a specific performance of the lease and other equitable relief. Reed then moved for a partial summary judgment against Ackerman on the issue of breach of the lease and also moved for a decree in equity. Specifically Reed sought specific performance of the lease entitling Reed to reoccupy the premises under the original lease term for the time period when occupation was wrongfully denied. The effect of this relief would be to allow Reed to occupy the premises beyond the original termination date of February 1985.

On March 7, 1983, the trial court granted Reed's motion for partial summary judgment holding that demolition had not occurred within a reasonable time and that Ackerman had wrongfully leased the premises to a third party without first offering the premises to Reed for reoccupation. The court reserved ruling on the terms of a decree in equity until further information in terms of reoccupation could be considered. Subsequently on April 8, 1983, the court entered another order stating it would reconsider its March 7 order and, pending reconsideration, Ackerman was restrained from beginning demolition of the Winecoff Hotel. On April 14, 1983, the court reaffirmed the grant of partial summary judgment to Reed. This judgment dissolved the restraining order and the court found and concluded after a consideration of all issues that the most appropriate relief was money damages.

Ackerman is appealing the grant of partial summary judgment on the issue of its violation of the lease. Reed is appealing from the denial of equitable relief.

1. Ackerman contends the court erred in granting summary judgment because there are issues of fact on the meaning of demolish or substantially demolish, the intent of Ackerman, what constitutes a reasonable time to begin demolition and whether the lease entered into allowing the Bank of the South to occupy the building until October of 1982 violated the original lease terms. Reed argues the trial court properly construed the lease and contends there are no factual issues remaining on whether the lease was breached by Ackerman.

The construction of the provisions of this lease, as with other contracts, is generally one for the court to determine as a matter of law. OCGA § 13-2-1 (Code Ann. § 20-701). It is contended that since acquiring the building, Ackerman has continuously intended to develop the area, either by remodeling and renovation of the present building or demolishing the structure and erecting a new building. The record reflects from June of 1981 until at least January of 1983 Ackerman was considering the options of renovation and demolition

with respect to its plans for the Winecoff. Ackerman contends that substantial renovation of the presently existing building is contemplated by the terms demolish or, in particular, "substantially demolish" contained in the lease. Thus the notice of termination of the leases stating the lessor's "intent to demolish" in June of 1981 would be a proper notice of termination of Reed's leasehold interest, even though plans at that time were for renovation.

In this state it has been held that demolition "means the art of tearing down a structure such as a wall or house." *Lexington Ins. Co. v. Ryder System, Inc.,* 142 Ga. App. 36, 37 (234 SE2d 839) (1977). While substantial renovation may involve the tearing down of interior walls and structure, we do not find that termination of this lease can be triggered by plans to renovate.

The lease provides for termination by the lessor if it "wishes to *demolish the building,*" (emphasis supplied) and lessor must give written notice of intent to "demolish or substantially demolish." The use of the word "substantially" in the notice provision in the lease at issue here is not an indication that the parties intended to include substantial renovation. The construction of a contract should be governed by the intent of the parties as expressed in the entire contract. *Hull v. Lewis,* 180 Ga. 721 (180 SE 599) (1935). The intent of the present contract is placed in express terms in the lease "to enable lessor to *demolish its building.*" (Emphasis supplied.) Absent a demolition, Reed was entitled to the benefit of its lease through February 1985.

As a general rule the provisions of a lease will be construed against the lessor. *Farm Supply Co. v. Cook,* 116 Ga. App. 814 (159 SE2d 128) (1967). Provisions in leases which result in a forfeiture of a tenant's possessory rights will be strictly construed. *Oastler v. Wright,* 201 Ga. 649 (40 SE2d 531) (1947); *Mendel v. Pinkard,* 108 Ga. App. 128 (132 SE2d 217) (1963).

The lease provides that if demolition has not begun within a reasonable time after the date of termination the lessor is prohibited from leasing to a third party unless Reed is given the option of reoccupying with all of its rights until February of 1985. The lease providing for occupancy of 178 Peachtree by Bank of the South violates this provision regardless of the motives of those involved. Ackerman notified Reed by letter of its intent to lease this space to Georgia Pacific, setting forth the conditions and rent amount. It argues that this amounted to an offer to Reed to reoccupy under the terms it had offered to Georgia Pacific and its subtenant, Bank of the South, and that the provision would require Reed to meet the terms of this lease to acquire reoccupancy rights. As we construe Reed's lease, the lessor must give Reed the right to reoccupy under the

original lease terms. Furthermore the letter to Reed explaining the new lease does not contain language indicating an offer to Reed to reoccupy under any terms or conditions.

In its March 9, 1983 order the trial court noted that while Ackerman stated in June of 1981 its intent to demolish, no demolition had begun and Ackerman had in fact rented to a third party. On the date of argument before this court, September 19, 1983, it was stipulated that the Winecoff had not yet been demolished. The intent of the lease provisions was to allow lessor to dispossess Reed (and its subtenants) if a decision to tear down the building was made. The June 1981 notice of intent to demolish did not comply with the lease provisions because at that time there was no intent to demolish as contemplated by the leases. The lease was further violated by the lease between Ackerman and Georgia Pacific. We hold the trial court was correct in granting summary judgment to Reed on the issue of whether the lease agreements were breached by Ackerman.

2. Reed contends the trial court erred in dissolving the restraining order preventing the demolition of the hotel and in failing to grant specific performance and a decree in equity allowing Reed to reoccupy under its leases. Since the beginning of this litigation Reed has been paying rent due under the leases into the registry of the court. The lease term is until February 1985. Reed contends it is entitled to reoccupancy for the entire period of time which reoccupancy has been wrongfully denied, 35 months, which should extend beyond the 1985 lease date.

The object of equity is to place the parties in the same position they would have occupied had a breach not occurred. *Golden v. Frazier,* 244 Ga. 685 (261 SE2d 703) (1979). Contracts for the lease of properties are enforceable by specific performance just as contracts for the sale of property. *F. & W. Grand Five-Ten-Twenty-Five Cent Stores v. Eiseman,* 160 Ga. 321 (127 SE 872) (1925). Reed argues that even if Ackerman now plans to begin demolition of the building the termination provision of the lease is a forfeiture provision which once wrongfully exercised may not be used again. See *Oastler v. Wright,* supra.

For extension of a lease beyond its termination date Reed relies on Williams v. James, 188 La. 884 (178 S 384) (1938). That case involved a five-year lease and specific performance was ordered after breach. The court reasoned that specific performance for only the portion of the lease remaining after judgment was not giving the lessee the benefit of his bargain and therefore ordered that the five-year term must begin on the date upon which the decree of the court became final.

Reed argues that the benefits of a store in this location are

unique. Reed had maintained a retail store at 181 Peachtree until the building was torn down for a new structure in 1981. Reed contends its plan was to then move to the equally desirable space it had continued to lease in the Winecoff for just such an eventuality. Reed further argues that if the Winecoff is torn down, equitable relief could be fashioned to grant Reed occupancy for 35 months in a space of equivalent size and location in the premises to be constructed by Ackerman.

Ackerman contends that to order reoccupancy of the Winecoff would delay the development of a downtown area which is important to the city and the public. Ackerman also challenges the fairness of ordering reoccupancy since Reed had in fact sublet the premises to others and was not in physical possession.

In its first order the trial court reserved the form or use of a decree in equity until hearing from the parties. In its April 14, 1983, order the court stated that after considering the types of remedies suggested by the parties it was the judgment of that court that the most appropriate remedy was to convert Reed's relief to money damages based upon fair market value of the lease period after wrongful termination.

The Restatement of Contracts, Second, § 364, provides that specific performance while otherwise appropriate will be refused if it "would cause unreasonable hardship or loss to the party in breach or to third persons." A more important factor which may be considered here is that specific performance will be denied if the enforcement and supervision of such a decree places too great a burden on the court. Restatement of Contracts, Second, § 366.

The trial court considered optional remedies proposed by the parties and under all of the circumstances of this case we find no error in his decision that money damages is the appropriate relief.

*Judgment affirmed. All the Justices concur.*

DECIDED NOVEMBER 16, 1983 —
REHEARING DENIED DECEMBER 5, 1983.

*Arnall, Golden & Gregory, Richard N. Hubert, Mark J. Clark,* for Peachtree on Peachtree Investors, Ltd. et al.

*Ware, Parker, Johnson, Cook & Dunlevie, Kirk W. Watkins,* for Reed Drug Company.