**FARRENDON CORPORATION, Plaintiff,**

v.

**GENESCO, INC., Defendant.**

**No. 1:91–CV–3192–RHH.**

United States District Court,
N.D. Georgia,
Atlanta Division.

May 4, 1992.

Thomas Edward Parmer, Johnson Beckham & Dangle, Carrollton, GA, Henry D. Fellows, Jr., Fellows Johnson Davis & Labriola, Atlanta, GA, for plaintiff.

H. Quigg Fletcher, III, Kilpatrick & Cody, Atlanta, GA, Jeffrey S. Bivins, Boult Cummings Conners & Berry, Nashville, TN, for defendant.

ROBERT H. HALL, District Judge.

*ORDER*

This is a case seeking amounts allegedly due Plaintiff pursuant to a commercial lease agreement. Diversity jurisdiction is vested with this Court pursuant to 28 U.S.C. § 1332.

The case is currently before the Court on Plaintiff's Motion for Summary Judgment [0–1], attached as Exhibit F to Plaintiff's Notice of Removal [1–1]. The Court GRANTS Plaintiff's Motion.

*BACKGROUND*

Plaintiff Farrendon Corporation is a Dutch corporation registered to do business in the State of Georgia. Defendant Genesco, Inc. is a Tennessee corporation also registered to do business in the State of Georgia.

On or about July 6, 1970, Defendant, through its division S.H. Kress variety/department store (the "Kress store"), entered into a written lease agreement (the "Lease") whereby Defendant agreed to lease from A.P.S., Inc. ("A.P.S.") certain commercial retail space located in the Mall–West End in Atlanta, Georgia (the "premises"). Plaintiff is the successor in interest to A.P.S. under the Lease, and has all the rights and remedies of A.P.S. as the Lessor of the premises. The term of the Lease was to be twenty (20) years, and was to run from the opening of the Kress store in 1972 until the expiration of the Lease on May 31, 1992.

Article 3 of the Lease provides for the monthly payment of rent and other fees by Defendant to Plaintiff, due and payable in advance on or before the first day of each month. Paragraph 21.9 of the Lease provides that any sums not paid by Defendant within the times set forth in the Lease shall bear interest from the date such payment was due at a rate of eight percent (8%) per annum until paid. Paragraph 16.4 of the Lease provides that following any default by Defendant under the terms of the Lease, Defendant will be liable for any attorney's fees incurred by Plaintiff in an effort to enforce or defend its rights and remedies

stayed pending resolution of the pending state criminal proceedings. *Mann,* 854 F.2d at 849.

under the Lease. Finally, the Lease provides in Paragraph 14.1 as follows:

14.1 Tenant shall not assign or in any manner transfer this lease or any estate or interest therein or sublet the Demised Premises or any part thereof without the prior written consent of the Landlord, which consent shall not be unreasonably withheld.

In 1974, with the express consent of A.P.S., Defendant through a Sublease Agreement ("Sublease") sublet the premises to Sunshine, which operated therein a business similar to the Kress store which had preceded it. Pursuant to the terms of the Sublease, Defendant remained liable to Plaintiff for payments due under the Lease. Defendant and Sunshine twice entered into extensions of the Sublease. The second and last extension of the Sublease was entered into as of January 1, 1986, and was due to expire by its terms on May 31, 1992, which was the same date that Defendant's Lease with Plaintiff was to have expired.

Sometime in the spring of 1988, Sunshine made known to various representatives of Plaintiff that Sunshine desired an extension of its Sublease of the premises, which would thus necessitate an extension of the Lease between Plaintiff and Defendant. Plaintiff's representatives responded by stating that Plaintiff was not interested in extending the Lease and Sublease, and intended to hold Defendant to the terms of the original Lease. Thereafter, due to a number of financial difficulties, Sunshine determined that it would be closing its business as of January 31, 1991, including that portion of the business occupying the premises in question. Despite the efforts of both Sunshine and Defendant to locate a suitable replacement tenant and sublessee, Plaintiff refused to agree to any of the proffered tenants. Accordingly, both Sunshine and Defendant at various times each offered to pay an additional $75,000 termination fee in exchange for the termination of the Lease and Sublease which could no longer be fulfilled. Nevertheless, Plaintiff continued to reject such offers. On or about December 29, 1990, Plaintiff sent Sunshine and Defendant a notice of default under the terms of the Lease.

On or about June 13, 1991, Plaintiff commenced the instant action against Defendant in the State Court of Fulton County, Georgia, Civil Action No. 91–VS–39429–E. On December 19, 1991, Plaintiff removed the case to this Court on the basis of diversity jurisdiction, the amount in controversy requirement of 28 U.S.C. § 1332 having been met subsequent to Plaintiff's original filing of its Complaint in State Court.

In its Complaint, Plaintiff alleges that Defendant has abandoned the premises and has failed to make the necessary monthly rental and other fee payments due under the Lease. Specifically, Plaintiff alleges that Defendant has failed to make such payments for the months of April through November, 1991. Plaintiff further alleges that as a result of Defendant's default, Defendant is, as of the filing of the Amendment to Complaint, indebted to Plaintiff in the amount of $145,560 for unpaid rent, plus interest on that amount calculated at a rate of eight percent (8%) per annum, plus pre-judgment and/or post-judgment interest, plus reasonable attorney's fees and costs. Presently, Plaintiff has moved for summary judgment.

### DISCUSSION

I. Standard of Review for Summary Judgment

This Court will grant summary judgment when "there is no genuine issue as to any material fact ... and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In cases where the movant is the defendant, that party must demonstrate that the nonmoving party, the plaintiff, lacks evidence to support an essential element of her or his claim. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554–55, 91 L.Ed.2d 265 (1986), *cert. denied,* 484 U.S. 1066, 108 S.Ct. 1028, 98 L.Ed.2d 992 (1988). Where, as here, the movant is the plaintiff, that party must demonstrate the absence of an issue of material fact with regard to *every* element essential to his or her claim. *Id.* The movant's burden is "discharged by showing—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* However, it is not enough in most situations for the movant merely to point out to the court this absence of evi-

dence. *Id.* at 323, 106 S.Ct. at 2552–53; *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991). Rather, "a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553 (quoting Fed.R.Civ.P. 56(c)).

Only after the movant meets its initial burden does any obligation on the part of the nonmovant arise. *Id.; Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160, 90 S.Ct. 1598, 1610, 26 L.Ed.2d 142 (1970); *Clark*, 929 F.2d at 608. Nevertheless, once the movant has met this initial burden, the opposing party must present evidence establishing a material issue of fact. *Celotex*, 477 U.S. at 325, 106 S.Ct. at 2554. The nonmoving party must go "beyond the pleadings" and present evidence designating "specific facts showing that there is a genuine issue for trial." *Id.* at 324, 106 S.Ct. at 2553.

All evidence and factual inferences should be viewed in the light most favorable to the nonmoving party. *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1529 (11th Cir.1987); *Everett v. Napper*, 833 F.2d 1507, 1510 (11th Cir.1987). However, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (emphasis in original). An issue is not genuine if it is unsupported by evidence or is created by evidence that is "merely colorable" or "not significantly probative." *Id.* at 250, 106 S.Ct. at 2511. Similarly, a fact is not material unless it is identified by the controlling substantive law as an essential element of the nonmoving party's case. *Id.* at 248, 106 S.Ct. at 2510. Thus, to survive a motion for summary judgment, the nonmoving party must come forward with specific evidence of every element essential to his or her case so as to create a *genuine* issue for trial. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552–53; *Rollins*, 833 F.2d at 1528.

## II. Application

In moving for summary judgment in the instant case, Plaintiff contends that the undisputed facts establish: (1) that Plaintiff and Defendant are parties to a valid and enforceable commercial lease agreement; (2) that Defendant has abandoned the premises designated in the Lease; (3) that Defendant has failed to make rental payments and other fee payments due under the terms of the Lease since April of 1991; and (4) that such abandonment of the premises and failure to make the payments required under the terms of the Lease constitute breaches of the Lease entitling Plaintiff to recover all such amounts due and owing thereunder.

In responding to Plaintiff's Motion, Defendant contends that there exists an issue of material fact in the instant case with regard to whether Plaintiff unreasonably withheld its consent to Defendant's proposed sublease of the premises, thus constituting a breach of the Lease by Plaintiff and barring Plaintiff's recovery of rental and other payments allegedly due thereunder.

As Plaintiff correctly points out, where a tenant has abandoned the leased premises, the landlord has the option of allowing the premises to remain vacant and attempting to collect the agreed-upon rental amount from the abandoning tenant, as Plaintiff has done here. In *Kimber v. Towne Hills Development Co.*, 156 Ga.App. 401, 274 S.E.2d 620 (1980), the Court stated:

> Abandonment by the tenant permits the landlord under the terms of the lease to terminate the lease, or to enter and obtain another tenant holding the original tenant liable for any deficiency, or to permit the premises to remain vacant and collect the agreed rent each month.

*Id.* at 402, 274 S.E.2d 620 (citing *Buford–Clairmont, Inc. v. Jacobs Pharmacy Co., Inc.*, 131 Ga.App. 643, 646–47, 206 S.E.2d 674 (1974)). Nevertheless, Defendant also correctly points out that where a lease, as does the instant one, contains a sublease clause providing that the landlord will not unreasonably withhold its required consent to a pro-

posed sublease arrangement between the tenant and a third party, the landlord's unreasonable withholding of such consent constitutes a breach of the lease agreement barring the landlord's recovery from the tenant of rental payments due under the terms of the lease.

Applicable here is the decision of the Court in *Stern's Gallery of Gifts, Inc. v. Corporate Property Investors, Inc.*, 176 Ga.App. 586, 337 S.E.2d 29 (1985). The facts in *Stern's* are very similar to those involved in the instant case. In 1974, Stern entered into a ten-year lease with Corporate Property Investors, Inc. ("C.P.I."), acting in its capacity as owner of Lenox Square Mall in Atlanta, Georgia, for operation of a card and gift shop in the mall. As in the instant case, the lease in *Stern's* provided that Stern could not sublease any portion of his space without CPI's consent and that such consent would "not be unreasonably withheld." 176 Ga.App. at 587, 337 S.E.2d 29. In 1976, Stern was approached by a number of retail merchants regarding the possibility of Stern's subleasing his space to one of the merchants, at a rate that would have produced a profit for Stern. In response to Stern's inquiries, CPI told Stern that it did not wish to consider a sublease, but would consider terminating Stern's lease and allowing Stern's prospects to rent directly from CPI.

In 1977, Stern vacated the premises and brought suit against CPI, alleging, *inter alia,* that CPI had failed to repair a continual roof leakage that had caused damage to Stern's inventory and, consequentially, lost profits. CPI counterclaimed for rent, which had not been paid since April, 1976. At trial, the Court denied Stern's motion for a directed verdict on the issue of whether CPI had unreasonably withheld its consent to the proposed sublease. The jury found in favor of CPI on this issue and Stern appealed.

On appeal, the Georgia Court of Appeals reversed the trial court's refusal to direct a verdict in favor of Stern with regard to his allegation that CPI had unreasonably withheld its consent to a proposed sublease of the space. In so doing, the Court stated that "[a]lthough questions of reasonableness and unreasonableness are most often questions of fact requiring the consideration of the jury, '[t]he construction of the provisions of [a]

lease ... is generally [a question] for the court to determine as a matter of law. O.C.G.A. § 13–2–1.' " *Id.* at 592–93, 337 S.E.2d 29 (quoting *Peachtree on Peachtree Investors v. Reed Drug Co.*, 251 Ga. 692, 694, 308 S.E.2d 825 (1983)).

Next, the Court observed that there "appear[ed] to be no Georgia cases directly on point," and thus surveyed decisions from other jurisdictions providing "examples of 'reasonable' versus 'unreasonable' withholding of a landlord's consent to subletting leased premises." *Id.* 176 Ga.App. at 594, 337 S.E.2d 29. Concluding that " 'a lease is a contract and, as such, should be governed by the general contract principles of good faith and commercial reasonableness' ", the Court held that " '[a] withholding of consent ..., which fails the tests for good faith and commercial reasonableness, constitutes a breach of the lease agreement.' " *Id.* at 596, 337 S.E.2d 29 (quoting *Fernandez v. Vazquez,* 397 So.2d 1171, 1173–74 (Fla.App.1981)).

In the instant case, in responding to Plaintiff's Motion for Summary Judgment, Defendant presents evidence purportedly demonstrating the existence of an issue of material fact with regard to whether Plaintiff unreasonably withheld its consent to a number of proposed subleases, thus preventing an award of summary judgment in Plaintiff's favor. However, the Court agrees with Plaintiff that the evidence submitted by Defendant in fact says nothing about whether or not Plaintiff unreasonably withheld its consent to a *sublease* arrangement, but rather demonstrates Plaintiff's refusal to enter into a separate lease agreement with a new party, which lease agreement would have extended considerably beyond the term of the original Lease between Plaintiff and Defendant. Moreover, as Plaintiff correctly points out, the mere fact that Plaintiff refused to accept the two offers by Sunshine and Defendant of $75,000 in exchange for termination of the Lease does not indicate Plaintiff's refusal to consent to a *sublease* arrangement. Presumably, any sublease arrangement to which Plaintiff could reasonably be expected to consent must necessarily provide for, first, Defendant's continued obligation under the terms of the Lease, and

1580

second, a termination date not extending beyond the terms of the original Lease between Plaintiff and Defendant. Defendant in the instant case has presented no evidence indicating that Plaintiff unreasonably refused to consent to any sublease arrangement satisfying these two critical requirements. Thus, the Court agrees with Plaintiff that Defendant has not demonstrated the existence of an issue of material fact with regard to whether Plaintiff unreasonably withheld its consent to a mere *sublease* arrangement so as to avoid summary judgment in Plaintiff's favor. Defendant offers no additional defenses to Plaintiff's claims, and in fact admits that it has both abandoned the premises and failed to remit rental and other payments due under the terms of the Lease for the period from April to November, 1991. Thus, the Court finds that Plaintiff is entitled to summary judgment for the amounts sought in its Complaint and Amendment to Complaint.

### CONCLUSION

The Court GRANTS Plaintiff's Motion for Summary Judgment [0–1], attached as Exhibit F to Plaintiff's Notice of Removal [1–1].

So ORDERED.