A94A2044. SMITH et al. v. GEIGER et al.
(456 SE2d 636)

BEASLEY, Chief Judge.

Defendant lessees Smith and Pass d/b/a Sylvan Hills Learning Center appeal the grant of a writ of possession, award of attorney fees and costs, and the denial of their motion for new trial in favor of plaintiff landlords, the Geigers, who sued to regain possession of a day care center.

On November 15, 1985, the parties entered into a lease-purchase agreement for "a business known as Sylvan Hills Learning Center, an ongoing concern engaged in the care of children." Originally, the term of the lease was three years and the monthly rental was $1,800. The lease provided for renewal after the first three years for an additional three years, then again after six years for an additional four years. At the end of the first three years, lessees had the option to purchase the center for a pre-determined sales price of $155,000. After six years, the price changed to $175,000. Finally, the lease provided that the landlords would convey fee simple title to lessees at the end of ten years, at no additional cost, if lessees complied with all terms, conditions, obligations, and covenants under the lease. Lessees paid $10,000 for the buy-out provision, when the lease was executed.

Approximately eight years into the ten-year period, the landlords instituted this "Proceeding Against Tenant Holding Over" on November 3, 1993. The landlords sought to terminate the lease and remove lessees from the premises, thereby foreclosing lessees' right to

purchase. The action was initially brought on the basis of lessees' failure to pay rent for November 1993. The suit was amended to allege additional default of the agreement, i.e., that lessees had failed to secure adequate insurance coverage and that tax liens had been filed on the premises in violation of the lease requirement for lessees to comply with "all laws."

Pursuant to a lease term allowing 30 days to cure any alleged defaults, lessees paid the November rent prior to trial. Following the bench trial, the lower court granted the landlords possession ten days from the date of the order plus $1,275 in attorney fees and $113 for court costs. The court found that there was no past rent due but that lessees were in default "due to 'all laws' not being observed, factually shown by existence of tax liens" and "insurance amounts contractually required are not now provided. . . ."

Lessees maintain that "the trial court disregarded well-settled rules of contract construction by reading doubtful lease terms against [them] to create a forfeiture." Landlords counter that this court has no choice but to affirm the trial court's judgment because the appeal is merely an "any evidence" review and there is evidence to support the judgment.

1. At the outset, we consider the state of the record. The bench trial was not transcribed by a court reporter, but there is a de facto record of the evidence. See OCGA § 5-6-41 (g). By timely motion, the lessees petitioned the trial court to enter additional findings of fact, which was within the court's discretion, OCGA § 9-11-52 (a) and (c), and submitted proposed findings. The landlords also proposed findings of fact in the event lessees' motion was successful. Ultimately, the court denied the motion because at the time of trial the parties had waived findings under OCGA § 9-11-52 (a).

The court's refusal to further detail the ruling did not negate or dilute the record accomplished by the parties' filings, which expressly incorporated the documents of record as exhibits. The case turns on questions of law applied to the uncontroverted facts of record.

2. "To recover in a suit on a contract, the complaining party must establish both a breach of the contract and resulting damages. [Cit.]" *Graphics Products Distributors v. MPL Leasing Corp.*, 170 Ga. App. 555 (1) (317 SE2d 623) (1984); *Solon Automated Svcs. v. Pines Assoc.*, 156 Ga. App. 34 (1) (274 SE2d 12) (1980). Plaintiffs failed to do so, as is shown below.

(a) One month's tardy payment of rent: Although defendants failed to pay rent for November 1993, on or before the first day of the month as provided in Paragraph 3 of the lease, they paid it prior to a triggering of default for nonpayment as provided in Paragraph 16 of the lease, and they were current with the rent at the time of trial. Consequently, the trial court found that no rent was due and made no

finding of default for nonpayment of rent.

(b) Payroll tax liens: It is undisputed that prior to 1990, defendants fell behind on their payroll taxes and that the Internal Revenue Service filed federal tax liens against taxpayers Smith and Pass personally and against their partnership on all property and rights to property belonging to the taxpayers for the amount of the delinquent taxes. The trial court found that this failure to pay taxes was in violation of Paragraph 11 of the lease, in which lessees agreed to comply with "all laws, rules and orders of all federal, state and municipal governments or departments thereof, *applicable to the leased premises.*" (Emphasis supplied.) The nonpayment of payroll taxes cannot be read as a default under the plain language of the cited provision of the lease. Although laws providing for payroll taxes may have applicability to defendants' business venture, those laws are not applicable to the leased premises itself. Paragraph 11 clearly distinguishes between the business and the premises in that earlier in this provision, defendants also agreed "to obtain and maintain all necessary and required licenses, permits and other applicable requirements for the operation of the type of business contemplated hereunder to be conducted on the premises." Moreover, "[a]s a general rule the provisions of a lease will be construed against the lessor. [Cit.] Provisions in leases which result in a forfeiture of a tenant's possessory rights will be strictly construed. [Cits.]" *Peachtree On Peachtree Investors, Ltd. v. Reed Drug Co.,* 251 Ga. 692, 695 (1) (308 SE2d 825) (1983).

Even if the delinquent payroll taxes constituted a breach under the agreement, the landlords cannot show damage because of it. Paragraph 13 of the lease states that "the Landlord has no ownership in the Lessee's enterprise and that this lease shall not be construed as a joint venture or partnership." In addition, the record contains an Internal Revenue Service "Certificate of Nonattachment of Federal Tax Lien" expressly listing all seven of the tax liens and certifying that the tax liability did not and does not attach to the subject real property "with building thereon, and with furniture, furnishings and equipment therein, all comprising an ongoing business known as Sylvan Hills Learning Center" and that "it has been determined that [the Geigers] are not liable for tax under the . . . assessment."

The landlords' assertion that the tax liens *might* place the property in jeopardy in the future is without support. Furthermore, damages cannot be demonstrated by speculation, conjecture, and guesswork but must be shown with reasonable certainty. *Solon Automated,* supra at 35 (1).

(c) Insurance coverage: In the lease, defendants agreed to maintain insurance with minimum limits of liability of $250,000 for injury or death to one person, $500,000 for injury or death to more than one person; and $100,000 with respect to damage of property. By letter

dated November 18, 1993, the landlords informed defendants that their insurance coverage was inadequate in amount and the insurer was not authorized to do business in Georgia; they demanded compliance with the lease provisions.

Defendants secured additional insurance coverage by a binder dated December 17, 1993, within the 30-day period allowed for curing a default under Paragraph 16. The fact that the landlords may not have received notice of the increased insurance until December 21 did not result in a default of the lease; what was required within the 30 days was that the insurance be procured. Even if notice outside the 30 days constituted a breach of the lease or if the acquired insurance was in some manner less than required by the letter of the agreement, there is no suggestion of damage to the landlords by the later notice or any discrepancy in coverage.

There being no valid legal basis for the issuance of the writ of possession and judgment in favor of the plaintiff landlords, it cannot stand. The denial of defendants' motion for new trial falls as well.

*Judgments reversed. McMurray, P. J., Pope, P. J., Johnson, Blackburn and Ruffin, JJ., concur. Birdsong, P. J., Andrews and Smith, JJ., dissent.*

ANDREWS, Judge, dissenting.

I respectfully dissent. Assuming arguendo that the issues raised in plaintiffs' amendment to the complaint bestow jurisdiction on this court, see OCGA § 5-6-35 (a) (1), (3), there is no adequate record before us of the evidence considered by the trial court. There is no transcript. There is no record that the "exhibits" to which appellants refer were introduced into evidence. The parties' various "filings" do not constitute evidence upon which this court may rely.

Appellants attempted to comply with OCGA § 5-6-41 by filing a "Narrative Transcript from Recollection by Agreement of Counsel." This document attached as exhibits both appellants' own "Proposed Additional Findings" and appellees' "Proposed Additional Findings of Fact." Appellants agreed to appellees' "Proposed Additional Findings of Fact," which document listed the various exhibits sought to be included in the record.

Appellants' "agreement" to appellees' "Proposed Additional Findings of Fact" does not comply with the requirements of OCGA § 5-6-41 for supplementing the record. Appellants may not convert appellees' "Proposed Additional Findings of Fact," which were not adopted by the trial court, into a stipulated-to-narrative transcript. The fact that no stipulation between the parties was ever reached is demonstrated by appellees' objection here to the "Narrative Transcript" upon which appellants rely.

I find no authority under OCGA § 5-6-41, nor under OCGA § 44-

7-56 for considering the exhibits attached to appellees' filing as evidence here. Because this attempt to supplement the record was not properly executed, there is no evidence before us of the lease which is the basis for appellants' appeal. Moreover, the fact that the parties referred to various documents in the argument below, does not mean that such documents are properly before us here.

"Where a party seeks to have the record on appeal supplemented, it is incumbent on him to follow the procedures set forth in OCGA § 5-6-41 (f). When this is not done, there is nothing for the appellate court to review." (Citations and punctuation omitted.) *Cox v. Fillingim*, 184 Ga. App. 205 (1) (361 SE2d 65) (1987). Accordingly, given the state of the record here, the trial court's judgment should be affirmed.

I am authorized to state that Presiding Judge Birdsong and Judge Smith join in this dissent.

SMITH, Judge, dissenting.

As Justice Oliver Wendell Holmes said in one of his most famous aphorisms, "hard cases make bad law." This is, at least in some ways, a hard case, and with the majority's decision, this court has made some very bad law indeed. In the not too distant future, we, or the Supreme Court, will find it necessary either to limit significantly the application of the majority opinion's holding in Division 1 or overrule it altogether.

DECIDED MARCH 14, 1995 —
RECONSIDERATION DENIED MARCH 31, 1995 —

*Christopher J. McFadden*, for appellants.
*Loewenthal, Jackson & Brown, Gary E. Jackson*, for appellees.